**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ALAN L. SHIELDS,**<br>**R29539,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**MAJOR YOUNG,**<br>**DR. WISEMAN,**<br>**WARDEN BROWN,**<br>**MS. CUNNINGHAM,**<br>**MS. CAMARILLO,**<br>**MS. GRAY,**<br>**LT. ATTEBURY,**<br>**JOSHUA CRAWFORD,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 3:26-cv-00964-GCS** |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Alan Shields, an inmate of the Illinois Department of Corrections ("IDOC") who is currently detained at Lawrence Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, Shields alleges the defendants took his wheelchair for nine days, forcing him as a paraplegic to crawl on a floor scattered with human waste.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen

[1] The Court has jurisdiction to resolve Shields's motions and to screen his Complaint due to his consent to the full jurisdiction of a magistrate judge (Doc. 3) and the IDOC's,

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Shields alleges that on September 18, 2024, Defendants Crawford, Attebury, and Young came to his cell in the crisis watch area and demanded that he relinquish his wheelchair. (Doc. 1, p. 11). Crawford claimed to be acting at the direction of Defendants Gray and Camarillo, mental health workers. Attebury acknowledged that Shields was paraplegic and knew the wing was often flooded with human waste, but he nevertheless gave three orders for Shields to relinquish the wheelchair. *Id.* Young claimed he was told that Defendants Cunningham, Wiseman, and Brown said that Shields could not have his wheelchair. *Id.* at p. 11-12. Shields directly told Young that without the wheelchair he would have to crawl on a floor strewn with human waste, and Young merely indicated Shields would have to file a grievance. *Id.* at p. 12. Young then indicated that if Shields did not give in, an emergency response team would be called, which could cause further injury or problems. Young also indicated that if Shields relinquished the wheelchair, Young would write an incident report about it. *Id.* Young ultimately took Shields's wheelchair. *Id.*

---

Wexford's, and Centurion's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the IDOC, Wexford, Centurion, and this Court.

Shields faults Wiseman for taking his wheelchair without ever personally seeing him or reviewing his medical file. (Doc. 1, p. 12). He explains that when he saw her for the first time on September 27, 2024, she indicated that Defendants Cunningham, Gray, Camarillo, and Brown had told her that Shields did not need a wheelchair, and she did not know any better. *Id.* Shields alleges that Defendant Gray signed off on taking his wheelchair even after he told her repeatedly that he needed to get around his cell and to get his daily insulin. He further alleges that Defendant Camarillo refused to give him his wheelchair and indicated there was nothing she could do about it. *Id.* Shields alleges that Camarillo, Gray, Wiseman, Young, Attebury, Crawford, Brown, and Cunningham all said he would have to put up with the human waste because it was part of crisis watch. Shields adds that his wheelchair was allegedly taken because he showed assaultive behavior on September 2, 2024, though it was not actually taken until September 18, 2024. He says his wheelchair was returned on September 27, 2024, after he saw Defendant Wiseman. *Id.*

Shields seeks monetary compensation and mentions he should be compensated for his needs not being met under the Americans with Disabilities Act ("ADA"). (Doc. 1, p. 13). In support of the complaint, Shields submitted relevant grievance documentation. *Id.* at p. 7-10.

## PRELIMINARY DISMISSALS

Shields alleges in passing that Defendant Gray refused to restore access to his wheelchair even when he repeatedly told her that without it he could not access his daily insulin medication. While there are instances when inmates can plead a claim related to

missed medications, Shields has not included enough information about the insulin access issue for the Court to discern a plausible claim against Gray specific to this medical need. Accordingly, no claim is defined below on this theory and it is dismissed without prejudice.

Additionally, in the demand for relief, Shields mentions the ADA for the first and only time. While it is not implausible that a paraplegic inmate might have some kind of ADA claim related to the need for his wheelchair, Shields's lack of detail about this theory makes the claim insufficient to proceed as initially pled, and it is dismissed without prejudice.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to organize the *pro se* action into the following count:

**Count 1:** **Eighth Amendment conditions of confinement or deliberate indifference claim against Defendants Crawford, Attebury, Young, Gray, Camarillo, Cunningham, Wiseman, and Brown for depriving Shields of his wheelchair from September 18, 2024, to September 27, 2024;**

The parties and the Court will use this designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

[2] *See e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face.").

**Count 1**

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 824 (1994)). To prove the objective component, an inmate must show the conditions were objectively sufficiently serious, and they posed an excessive risk to his health and safety. *See Jones v. Anderson*, 116 F.4th 669, 679 (7th Cir. 2024). To prove the subjective component, an inmate must show prison officials had actual knowledge that he faced a substantial risk of serious harm, and they disregarded the risk by failing to abate it. *Id.*

Under the Eighth Amendment, inmates are entitled to adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For the first step of the analysis, a serious medical condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Some of the indications of a serious medical condition include whether left untreated it could result in "further significant injury or unnecessary and wanton infliction of pain," it "significantly affects an individual's daily activities," or it features "chronic and substantial pain." *Gutierrez v.*

*Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (cleaned up). At the second step, to determine if a medical professional acted with deliberate indifference, courts look to the provider's subjective state of mind. *See Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An inmate need not show that a doctor explicitly intended harm or believed it would occur, but he must show more than negligence, medical malpractice, or even objective recklessness. *Id.* Deliberate indifference is a culpability standard akin to criminal recklessness. *See Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

For an inmate to demonstrate that a non-medical prison employee exhibited deliberate indifference to a medical need, he must establish a serious medical condition, and he must establish that an official knew that a serious risk existed and recklessly disregarded the situation or took woefully inadequate actions. *See, e.g.*, *Eagan v. Dempsey*, 987 F.3d 667, 693-698 (7th Cir. 2021) (assessing an inmate's deliberate indifference claims against prison guards whom he interacted with during a bout of self-harming behavior).

Shields's allegations straddle the line between a conditions of confinement claim and a deliberate indifference to a medical needs claim, but both Eighth Amendment claims require the same basic premise. A serious risk of harm from a condition or medical need, and knowing disregard of that risk by a prison official. The Court assumes for purposes of this initial review that being paraplegic and unable to get around a cell without crawling on a floor littered by human feces is a sufficiently serious medical condition or poses a significantly serious risk of harm to satisfy the first prong of an Eighth Amendment claim.

On the second prong, deliberate indifference, Shields alleges personal face-to-face interactions or involvement about his need for the wheelchair with Defendants Crawford, Attebury, Young, Camarillo, and Gray. Specifically, Crawford, Young, and Attebury came to physically remove the wheelchair from his possession on September 18, 2024, and would not reconsider the removal despite pleas about his paraplegic needs. At this initial phase, the Court finds these allegations sufficient to proceed. Additionally, Shields alleges Gray physically signed off on the removal of the wheelchair even after he told her about the difficulties in getting to the medication line, and Camarillo refused to return the wheelchair or raise the issue with the medical unit. These allegations are also sufficient to proceed. Shields further alleges he was told multiple times that Defendants Cunningham and Brown approved the confiscation of his wheelchair. Though these allegations fail to describe Cunningham's and Brown's precise role, they are adequate to proceed at this initial stage.

By contrast, the Court is not persuaded that Shields has alleged adequate personal involvement by Dr. Wiseman. Shields indicates Wiseman told him she did not realize the extent of his condition, and she restored access to his wheelchair on September 27, 2024, when she physically saw him for the first time. On these assertions, it cannot be said that Wiseman exhibited true deliberate indifference, as opposed to plain negligence or something less. Count 1 against Defendant Wiseman will be dismissed without prejudice as insufficient to state a claim.

## Disposition

**IT IS HEREBY ORDERED THAT Count 1** of the Complaint may proceed against Defendants Crawford, Attebury, Young, Gray, Camarillo, Brown, and Cunningham. By contrast, **Count 1** is insufficient as pled against Defendant Wiseman, and the Clerk of Court shall **TERMINATE** Defendant Wiseman.

The Clerk of Court is **DIRECTED** to prepare for Defendants Crawford, Attebury, Young, Gray, Camarillo, Cunningham, and Brown: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. *See* FED. R. CIV. PROC. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: November 5, 2026.**

Digitally signed by Judge Sison
Date: 2026.11.05 11:42:54 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.